## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

CRUM & FORSTER SPECIALTY      )
INSURANCE COMPANY,      )
         )
       Plaintiff,      )
V.      )
         )  Case No.:  20-cv-1146
B&K TECHNOLOGY SOLUTIONS, INC.     )
d/b/a ADVANCED TECHNOLOGY     )
RECYCLING,  and SA CAMPBELL     )
PROPERTIES, LLC,     )
       Defendants.     )

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Crum & Forster Specialty Insurance Company ("C&F"), by and through its undersigned counsel, as and for its Complaint for Declaratory Judgment against Defendants, B&K Technology Solutions, Inc. d/b/a Advanced Technology Recycling ("ATR") and SA Campbell Properties, LLC ("SACP"), states as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. In this action, C&F seeks a determination of its rights and obligations under an insurance policy issued by it to ATR in connection with an underlying lawsuit filed by SACP, which asserts certain claims against ATR.

## JURISDICTION AND VENUE

2.      This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000.

4.      Venue is proper in the Central District of Illinois pursuant to 28 U.S.C. § 1391(a) as Defendant ATR resides in the Central District of Illinois.

5.      Plaintiff C&F is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in the state of New Jersey.  At all relevant times, C&F was authorized to conduct business in the State of Illinois.

6.      Defendant ATR is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 902 N. Hazel Street, Pontiac, Illinois 61764.

7.      Defendant SACP is a Utah limited liability company, with its principal place of business in Toole County, Utah, whose sole member is Scott Campbell, a resident and citizen of the State of Utah.

8.      The Underlying Action (as defined herein) is pending in the Third Judicial Circuit Court of Tooele County, Utah.

9.      C&F issued an insurance policy to ATR, as described more fully below.

10.      The scope of the coverage available to ATR under the policy is governed by the terms, conditions, and exclusions of the policy.

11.      Plaintiff C&F does not assert any claim against Defendant SACP in the Complaint and Defendant SACP has been named as a defendant in this action solely as a necessary and indispensable party.

**THE UNDERLYING ACTION**

12.      In an August 29, 2019 letter to ATR , SACP demanded that ATR pay SACP damages allegedly resulting from environmental cleanup and facilities repairs at 135 Lodestone Way in Tooele, Utah, which ATR leased from one of Mr. Campbell's companies until February

2

2019. A copy of SACP's August 29, 2019 letter is attached hereto as Exhibit A.

13.     On or about February 7, 2020, SACP filed a lawsuit styled *SA Campbell Properties, LLC v. B&K Technology, Inc. d/b/a Advanced Technology Recycling and Travelers Casualty and Surety Company of America*, Case No. 200300227, in the Third Judicial Circuit of Tooele County, Utah (the "Underlying Action"). A true and correct copy of the Complaint filed in the Underlying Action (the "Complaint") is attached hereto as Exhibit B.

14.     The Complaint alleges that SACP owns a building (the "Building") located at 135 Lodestone Way in Tooele, Utah (the "Premises"). Ex. B at ¶ 1.

15.     The Complaint further alleges that ATR formerly leased the Premises from SACP pursuant to a lease agreement (the "Lease"), which the parties executed in September 2016. Ex. B at ¶ 8.

16.     The Complaint further alleges that "[v]arious disputes arose between the parties regarding their performance of the Lease, which the parties resolved in a mediation in October 2018.  Following mediation, the parties entered into a settlement agreement (the "Agreement"). Ex. B at ¶ 16.

17.     The Complaint further alleges that "[i]n the Agreement, the parties agreed to terminate the Lease 'effective February 15, 2019'" and ATR "agreed to 'vacate the Premises on or before' that date."  Ex. B at ¶ 18.

18.     The Complaint alleges that, until February 15, 2019, the terms of the Lease would "'continue to govern [ATR's] use of the Premises [and any] provisions of the Lease that [were] not amended by, or replaced by, or' which did 'not otherwise conflict with the provisions of' the 'Agreement' would "remain in full force and effect.'" Ex. B at ¶ 19.

19.     The Complaint further alleges that "[i]n exchange for a settlement payment and ATR's agreement to terminate the Lease, SACP agreed to release a variety of claims against ATR, but the Agreement expressly provided that the 'Claims' being released 'shall not include the obligations set forth in this Agreement, nor shall it include claims arising from the Lease that arise after the Effective Date' of the Agreement."  Ex. B at ¶ 20.

20.     The Complaint alleges that ATR vacated the Site on February 15, 2019. Ex. B at ¶ 21.

21.     The Complaint further alleges that, following ATR's departure, SACP soon discovered that ATR failed to comply with its contractual obligations under the Lease.  Ex. B at ¶ 22.

22.     The Complaint alleges that "ATR left behind toxic dust throughout the Building." Ex. B at ¶ 23.

23.     The Complaint further alleges that, on February 27, 2019, inspectors from the Utah Occupational Safety and Health Administration ("OSHA") "tested the dust and detected the presence of 'heavy metals such as lead, cadmium, and 'arsenic.'"  Ex. B at ¶ 23.

24.     The Complaint further alleges that OSHA recommended that SACP "'take appropriate safety and health measures before allowing any company to operate in this building based on lab results.'" Ex. B at ¶ 24.

25.     The Complaint further alleges that "[t]hese dangerous heavy metals were not scattered throughout the Building when ATR took possession of it in September 2016. OSHA inspected the Building in August 2015 and specifically tested dust throughout the facility but did not find any significant levels of heavy metals." Ex. B at ¶ 25.

26.     The Complaint further alleges that OSHA performed air monitoring at the Site and concluded that such metals were not being produced at that time. Ex. B at ¶ 26.

27.     The Complaint further alleges that "[t]o remove all the toxic dust from the Building, SACP had to hire Clean Harbors Environmental Services ["Clean Harbors"], an environmental cleanup firm." Ex. B at ¶ 27.

28.     The Complaint alleges that Clean Harbors finished removing all the toxic dust from the Site on July 8, 2019, at the cost of $105,648.  Ex. B at ¶ 28.

29.     The Complaint further alleges that "SACP could not rent the Building until the environmental cleanup was complete, which left its Building vacant from February 15, 2019, through July 8, 2019." Ex. B at ¶ 29.

30.     The Complaint alleges that "[b]ased on the rental rate per square foot of ATR's Lease, SACP estimates that it could have rented the Building for at least $929.35 per day for the 143 days between February 15, 2019, and July 8, 2019, for a total of $132,897.05. Ex. B at ¶ 31.

31.     The Complaint further alleges that "ATR left the Building in a state of disrepair. There was damage to the HVAC system, clogged toilets, damage to the radiant heat system, broken LED lights, destroyed carpets, and trash and other detritus from ATR's electronic recycling business scattered throughout the Building." Ex. B at ¶ 32.  The Complaint further alleges that such damages would cost a total of $61,725 to fix.  Ex. B at ¶ 33.

32.     SACP alleges two causes of actions against ATR in the Complaint: Breach of Contract and the Breach of the Duty of Good Faith and Fair Dealing.  *See* Ex. B at Counts I and III.

33.      In Count I of the Complaint, SACP alleges that ATR "has materially breached the Lease by failing to deliver the Building in substantially better condition than when it took

possession. For example, it left toxic dust scattered throughout the Building and failed to deliver the HVAC system, radiant heat system, and other components of the Building to SACP in rentable condition when it vacated the Building on February 15, 2019." Ex. B at ¶ 39.

34.     In Count I, SACP seeks an award of damages against ATR in an amount to be proven at trial, but not less than $300,270.05, together with consequential damages, pre- and post-judgment interest, and an award of attorney fees pursuant to the terms of the Lease and Utah law. Ex. B, Prayer for Relief at ¶ 1.

35.     In Count III of the Complaint, SACP alleges that ATR breached the implied covenant of good faith and fair dealing contained in the Lease by failing to deliver the Building in substantially better condition than when it first took possession of the building.  Ex. B at ¶ 52.

36.     In Count III, SACP seeks an award of damages against ATR in an amount to be proven at trial, but not less than $300,270.05, together with consequential damages, pre- and post-judgment interest, and an award of attorney fees pursuant to the terms of the Lease and Utah law.  Ex. B, Prayer for Relief at ¶ 3.

## THE POLICY

37.     C&F issued Environmental Package Policy Number EPK-121984 to Named Insured Advanced Technology Recycling, effective April 4, 2018 to April 4, 2019 (the "Policy"). A true and correct certified copy of the Policy is attached hereto as Exhibit C.

38.     The Policy provides Commercial General Liability ("CGL") coverage with limits of liability of $1,000,000 for each Occurrence and a $3,000.000 General Aggregate.  Ex. C at p. CF00001.

39.     The Policy provides Contractors Pollution Liability ("CPL") coverage with limits of liability of $1,000,000 for each Pollution Condition and a $2,000,000 General Aggregate.  Ex.

C at CF000006. The Policy's CPL Coverage Part has a deductible of $25,000 for each Pollution

Condition. Ex. C at CF000014.

40.    The Policy provides Third Party Pollution Liability ("TPPL") coverage with

limits of liability of $1,000,000 for each Pollution Condition and a $2,000,000 General

Aggregate.  Ex. C at CF000006. The Policy's TPPL Coverage Part has a deductible of $25,000

for each Pollution Condition. Ex. C at CF000014.

41.    The Policy provides Errors & Omissions ("E&O") coverage with limits of

liability of $1,000,000 for each Wrongful Act and a $2,000,000 General Aggregate.  Ex. C at

CF000006. The Policy's E&O Coverage Part has a deductible of $25,000 for each Claim. Ex. C

at CF000014.

42.    The Policy provides Onsite Cleanup coverage with limits of liability of

$1,000,000 for each Pollution Condition and a $2,000,000 General Aggregate, subject to a

$25,000 Each Pollution Condition deductible.  Ex. C at CF000006. The Policy's Onsite Cleanup

Coverage Part has a deductible of $25,000 for each Pollution Condition. Ex. C at CF000014.

43.    The Policy includes the following relevant Common Definitions:

***

**7.** "Cleanup costs" means expenses incurred in the investigation, evaluation,
     monitoring, testing, removal, containment, treatment, response, disposal,
     remediation, detoxification or neutralization of any "pollutants". …

***

**9.** "Damages" means the monetary amount of any judgment, award or settlement
     that an insured becomes legally obligated to pay as a result of a "claim" or
     "suit". "Damages" does not include "cleanup costs", equitable or
     nonpecuniary relief, disgorgement of profits, sanctions, fines or penalties.

***

7

20. "Locations" means the specific location(s) designated in an endorsement to the Third Party Pollution Liability Coverage Part or the Onsite Cleanup Coverage Part.

\*\*\*

26. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

28. "Policy period" means the period shown in the Declarations, unless cancelled, in which event, the "policy period" ends on the date that such cancellation is effective.

29. "Pollutants" mean any solid, liquid, gaseous, thermal or biological irritant or contaminant, including, without limitation, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste and any matter that by its presence, corrupts, defiles, contaminates or is harmful to the soil, air, or water, living things or the environment. Waste includes materials to be recycled, reconditioned or reclaimed.

   It is understood that any substance or matter that is a "pollutant" does not lose its status as a "pollutant" because: (1) such substance or matter has, or may have, a useful function or purpose; or (2) the release, threatened release or presence of such substance or matter in any locale is not regulated, prohibited, remedied by, or the subject of, one or more "applicable laws".

30. "Pollution condition" means the discharge, dispersal, seepage, migration, release, escape, presence or movement of "pollutants".

   Two or more "pollution conditions" arising out of the same or related acts of discharge, dispersal, seepage, migration, release, escape or movement of "pollutants" shall be deemed to be a single "pollution condition".

\*\*\*

32. "Professional services" means those functions performed for others by you or by others on your behalf that are related to your practice as a consultant, engineer, architect, surveyor, laboratory or construction manager.

33. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

***

**43.** "Wrongful act" means an act, error or omission in the rendering or failure to render "professional services" by any insured covered under the Insuring Agreement of the Errors and Omissions Liability Coverage Part.

Ex. C at CF000038, CF000042- CF000045.

<u>**The Commercial General Liability Coverage Part of the Policy**</u>

44.    The insuring agreement for Coverage A of the Policy's Commercial General Liability ("CGL") Coverage Part of the Policy  provides, in pertinent part, as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**    **Insuring Agreement**

      **a.** We will pay, in excess of the Deductible shown in the Declarations, those sums that the insured becomes legally obligated to pay as "damages" for "bodily injury" or "property damage" to which this insurance applies . . .

Ex. C at p. CF000048.

45.    Additional Exclusion c. **Damage to Property** of the CGL Coverage Part of the Policy excludes coverage for "property damage" arising out of "[p]roperty you own, rent, occupy, including, without limitation, any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, restoration or maintenance or such property for any reason, or the prevention of injury to a person or damage to another's property; …" Ex. C at CF000053- CF000054.

9

**The Contractors Pollution Liability Coverage Part of the Policy**

46.    The insuring agreement of the Contractors Pollution Liability ("CPL") Coverage

Part of the Policy provides, in pertinent part, as follows:

**SECTION I – INSURING AGREEMENT**

**1.    Contractors Pollution Liability**

    **a.** We will pay, in excess of the Deductible shown in the Declarations,
    those sums the insured becomes legally obligated to pay:

      **(1)** As "damages for "bodily injury" or "property damage"; and

      **(2)** For "cleanup costs";

    resulting from a "pollution condition that was caused by an "occurrence"
    and to which this insurance applies. …

Ex. C at CF000058.

47.    Additional Exclusion **2. Damage to Property** of the CPL Coverage Part of the

Policy excludes coverage for any "damages," "defense expenses," "cleanup costs," or any other

loss, cost of expense, or any "claim" or "suit":

    Based upon or arising out of "property damage" to, or "cleanup costs" for, any
    real or personal property or facility that, in whole or in part, was rented to,
    occupied by or in the care, custody and control of any insured at any time. …

Ex. C at CF000059.

**The Third Party Pollution Liability Coverage Part of the Policy**

48.    The insuring agreement for the Third Party Pollution Liability ("TPPL")

Coverage Part of the Policy  provides, in pertinent part, as follows:

**SECTION I – INSURING AGREEMENT**

**1.    Third Party Pollution Liability**

    **a.** We will pay, in excess of the Deductible shown in the Declarations,
    those sums the insured becomes legally obligated to pay:

**(1)** As "damages because of "bodily injury" or "property damage"; and

**(2)** For "cleanup costs";

resulting from a "pollution condition that was caused by an "occurrence" and to which this insurance applies. …

Ex. C at CF000064.

49.     Additional Exclusion **3. Insured's Property Damage or Cleanup Costs** of  the

Policy's TPPL Coverage Part of the Policy excludes coverage for "damages" or any loss, cost or

expense, or any "claim" or "suit" for :

"'property damage' to or 'cleanup costs' on property owned, leased, occupied or operated by any insured, or property in the care, custody or control of any insured, whether or not any cost is incurred or expenses to avoid or mitigate further damages or 'claims.'"

Ex. C at CF000066.

<u>**The Errors & Omissions Liability Coverage Part of the Policy**</u>

50.     The insuring agreement of the Errors & Omissions Liability (E&O) Coverage Part

of the Policy  provides, in pertinent part, as follows:

**SECTION I – INSURING AGREEMENT**

**1.       Errors and Omissions Liability**

**a.** We will pay, in excess of the Deductible shown in the Declarations, those sums the insured becomes legally obligated to pay as "damages" or "cleanup costs" because of a "wrongful act" to which this insurance applies. …

Ex. C at CF000061.

51.      The Policy defines "wrongful act" to mean an act, error or omission in the

rendering or failure to render "professional services" by any insured.  Part. Ex. C at CF000045.

11

52.    By endorsement, the Policy defines "professional services" as "scrap metal and recycling material consulting to third parties."  Ex. C at CF000103.

### The Onsite Cleanup Coverage Part of the Policy

53.    The insuring agreement for the Onsite Cleanup Coverage Part of the Policy provides, in pertinent part, as follows:

**ONSITE CLEANUP COVERAGE PART**

**SECTION I - INSURING AGREEMENTS**

**1. Onsite Cleanup**

We will pay, in excess of the Deductible shown in the Declarations, those sums the insured becomes legally obligated to pay as "cleanup costs" arising out of a "pollution condition" that was caused by an "occurrence" and to which this insurance applies, but we do not have any duty to defend the insured or pay "defense expenses".  The amount we will pay for "cleanup costs" is limited as described in Section IV -Limits Of Insurance And Deductible within the Common Provisions.

    **a.** This insurance applies to "cleanup costs" only if all of the following conditions are met:

        **(1)** Before the "policy period", no insured had knowledge of any "pollution condition";

        **(2)** No fact, incident or circumstance involving a "pollution condition" was reported under any policy in effect before the "policy period" or disclosed in the application for this Policy;

        **(3)** The "cleanup costs" result from a "pollution condition" at or on your "location(s)" within the "coverage territory";

        **(4)** The "pollution condition" begins on or after the earlier of either this Policy's effective date, or Retroactive Date, if any, shown in the Declarations, and before the end of the "policy period"; and

        **(5)** The request for "cleanup costs" is made to us in writing, in accordance with the provisions set forth in Section III -Additional Conditions within this Coverage Part, during the "policy period".

Ex. C at CF000068.

54.     Pursuant to the operation of the Covered Locations Endorsement (form EN0615-0211), the Onsite Cleanup Coverage Part of the Policy was modified to provide as follows:

### COVERED LOCATIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

THIRD PARTY POLLUTION COVERAGE PART
ONSITE CLEANUP COVERAGE PART

### SCHEDULE

**Covered "Location(s)":**                                      **Retroactive Date(s)**

***

| 135 Lodestone Way, Tooele, UT 84074 | 4/4/2017 |

A. The Retroactive Date(s) indicated in the Schedule shown above applies only to the corresponding location indicated in the Schedule shown above.

***

C. **SECTION I – INSURING AGREEMENT, 1. Insuring Agreement – Onsite Cleanup** is amended by the addition of the following:

This Policy applies to "cleanup costs" resulting from "pollution conditions" that:

1. Exist at, on or emanate from the Covered "Location(s)" indicated in the Schedule shown above; and

2. Begin after this Policy's effective date or the Retroactive Date indicated in the Schedule shown above, and before the end of the "policy period".

***

Ex. C at CF000108.

55.     Pursuant to operation of General Change Endorsement – Policy Change Number 002, the Premises (135 Lodestone Way, Tooele, UT 84074) was removed from the Covered Locations Endorsement of the Policy effective February 20, 2019.  Ex. C at CF000003.

56.     Pursuant to the operation of the Onsite Cleanup Coverage Sudden & Accidental Limitation endorsement, the insuring agreement of the Onsite Cleanup Coverage Part of the Policy was modified to provide as follows:

This endorsement modifies insurance provided under the following:

**ONSITE CLEANUP COVERAGE PART**

**SCHEDULE**

| **Discovery Period:** | 72 hours |
|---|---|
| **Reporting Period:** | 10 days |

In consideration of the premium charged, it is hereby agreed that the **Onsite Cleanup Coverage Part** (EN0027), Section I – **Insuring Agreement, 1. Onsite Cleanup**, paragraph **a.**, sub-paragraph **(4)** is deleted in its entirety and replaced by the following:

**(4)** The "pollution condition":

   **(a)**   Begins on or after the earlier of either the beginning of the "policy period" or Retroactive Date, if any, shown in the Declarations of this Policy; and

   **(b)**   Begins prior to the end of the "policy period"; and

   **(c)**   Is sudden and accidental and is discovered within the "discovery period" shown in the Schedule above; and

   **(d)**   Is reported to us within the "reporting period" shown in the Schedule above.

Solely with respects to this Endorsement, the following definitions shall apply:

"Discovery Period" means the period of time following the commencement of a "pollution condition" in which an insured must discover or be made aware of that "pollution condition.

"Reporting Period" means the period of time following the discovery of a "pollution condition" in which an insured must report that "pollution condition" to us.

*\*\*\**

14

Ex. C at CF000115.

57.     The   Onsite   Cleanup   Coverage Part of the Policy includes, *inter alia*, the following exclusion and condition to coverage:

### SECTION II - ADDITIONAL EXCLUSIONS

The following additional exclusions apply to the Onsite Cleanup Coverage Part:

This Policy does not apply to "cleanup costs": …

**6. Lead Contamination**

> **a.** For any loss, cost or expense arising out of any request, demand or order that any insured or any person test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

> **b.** For any loss, cost or expense arising out of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

***

### SECTION III - ADDITIONAL CONDITIONS

**3. Continuous or Progressive Damage or Injury**

> A "pollution condition" occurring or existing partly before and partly on or after the Retroactive Date will be deemed to have occurred or existed before the Retroactive Date.

> If the date cannot be determined upon which such "pollution condition" first occurred or existed then, for the purposes of policies issued by us, such "pollution condition" will be deemed to have occurred or existed before the Retroactive Date.

Ex. C at CF000069, CF000071.

<u>**THIS DISPUTE**</u>

58.     ATR has sought a defense and indemnity under the Policy in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

15

59.    C&F has determined through its coverage investigation that it owes no obligation to defend or indemnify ATR in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

60.    C&F has advised ATR in writing that it disclaims any obligation under the Policy to provide a defense to or indemnify it in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

61.    C&F now brings this action to obtain a judicial declaration that the Policy provides no defense or indemnity obligations to ATR in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

## COUNT I
### (No Coverage Under Policy's CGL Coverage Part)

62.    C&F incorporates by reference herein paragraphs 1 through 61, as if the same were fully set forth at length.

63.    The CGL Coverage Part of the Policy excludes coverage for "property damage" arising out of "[p]roperty you own, rent, occupy, including, without limitation, any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, restoration or maintenance or such property for any reason, or the prevention of injury to a person or damage to another's property; …" Ex. C at CF000053- CF000054.

64.    The Complaint seeks damages for "property damage" arising out of property (the Premises) formerly rented to, occupied by, or in the care, custody or control of ATR. Ex. B at ¶ 23.

65.    The CGL Coverage Part of the Policy does not afford coverage for the claims asserted against ATR in the Underlying Action because the Complaint seeks to impose liability

against ATR for "property damage" to a property formerly rented to, occupied by, or in the care, custody or control of ATR, which is precluded from coverage.

66.     Accordingly, the CGL Coverage Part of the Policy does not afford coverage for the claims asserted against ATR in the Underlying Action.

WHEREFORE, C&F seeks a judgment that it owes no duty under the CGL Coverage Part of the Policy to defend or indemnify ATR in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

**COUNT II**
**(No Coverage Under Policy's CPL Coverage Part)**

67.     C&F incorporates by reference herein paragraphs 1 through 66, as if the same were fully set forth at length.

68.     The CPL Coverage Part of the Policy excludes coverage for any "damages," "defense expenses," "cleanup costs," or any other loss, cost of expense, or any "claim" or "suit" … "[b]ased upon or arising out of 'property damage' to, or 'cleanup costs' for, any real or personal property or facility that, in whole or in part, was rented to, occupied by or in the care, custody and control of any insured at any time."  Ex. C at CF000059.

69.     The Complaint seeks "damages" based upon or arising out of "property damage" to, and/or "cleanup costs" for real property (the Premises) formerly rented to, occupied by, or in the care, custody or control of ATR. Ex. B at ¶ 23.

70.     The CPL Coverage Part of the Policy does not afford coverage for the claims asserted against ATR in the Underlying Action because the Complaint seeks to impose liability against ATR for "damages" based upon or arising out of "property damage" to and/or "cleanup costs" for, real property formerly rented to, occupied by, or in the care, custody and control of ATR, which is precluded from coverage.

71.     Accordingly, the CPL Coverage Part of the Policy does not afford coverage for the claims asserted against ATR in the Underlying Action.

WHEREFORE, C&F seeks a judgment that it owes no duty under the CPL Coverage Part of the Policy to defend or indemnify ATR in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

<u>**COUNT III**</u>
<u>**(No Coverage Under Policy's TPPL Coverage Part)**</u>

72.     C&F incorporates by reference herein paragraphs 1 through 71, as if the same were fully set forth at length.

73.     The TPPL Coverage Part of the Policy excludes coverage for "damages" or any loss, cost or expense, or any "claim" or "suit" arising from "property damage" to, or "cleanup costs" on, property owned, leased, occupied or operated by any insured, or property in the care, custody or control of any insured, whether or not any cost is incurred or expenses to avoid or mitigate further damages or "claims." Ex. C at CF000066.

74.     The Complaint seeks "damages" arising from "property damage" to and/or "cleanup costs" on a property (the Premises) formerly rented to, occupied by or in the care, custody and control of ATR. Ex. B at ¶ 23.

75.      The TPPL Coverage Part of the Policy does not afford coverage for the claims asserted against ATR in the Underlying Action because the Complaint seeks to impose liability against ATR for "damages" arising from "property damage" to, or "cleanup costs" on, property formerly rented to, occupied by, or in the care, custody or control of ATR, which is precluded from coverage.

76.     Accordingly, the TPPL Coverage Part of the Policy does not afford coverage for the claims asserted against ATR in the Underlying Action.

WHEREFORE, C&F seeks a judgment that it owes no duty under the TPPL Coverage Part of the Policy to defend or indemnify ATR in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

## COUNT IV
### (No Coverage Under Policy's E&O Coverage Part)

77.    C&F incorporates by reference herein paragraphs 1 through 76, as if the same were fully set forth at length.

78.    The insuring agreement of the E&O Coverage Part of the Policy provides that coverage applies to sums the insured becomes legally obligated to pay as "damages" or "cleanup costs" because of a "wrongful act" in the rendering of "professional services." The Policy defines "wrongful act" to mean an act, error or omission in the rendering or failure to render "professional services" Ex. C at CF000045, CF000061, CF000103.

79.    The Complaint does not allege that ATR committed an act, error or omission in the rendering or failure to render "professional services," nor seeks to impose liability for "damages" or "cleanup costs" resulting from such "wrongful act."

80.    Accordingly, the E&O Coverage Part of the Policy does not afford coverage for the claims asserted against ATR in the Underlying Action.

WHEREFORE, C&F seeks a judgment that it owes no duty under the E&O Coverage Part of the Policy to defend or indemnify ATR in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

## COUNT V
### (No Coverage Under Policy's Onsite Cleanup Coverage Part – Failure to Timely Report a Pollution Condition)

81.    C&F incorporates by reference herein paragraphs 1 through 80, as if the same were fully set forth at length.

82.   Pursuant to the operation of the Onsite Cleanup Coverage Sudden & Accidental Limitation endorsement, the Insuring Agreement of the Onsite Cleanup Coverage Part of the Policy was modified to provide that "[t]his insurance applies to 'cleanup costs' only if certain conditions are met including, but not limited to, that the 'pollution condition' began on or after the earlier of the beginning of the "policy period" (April 4, 2018) or the Retroactive Date (April 4, 2017) and prior to the end of the "policy period" (February 20, 2019 for the Premises), and further that the "pollution condition" was discovered by an insured within 72 hours of its commencement  and reported to C&F within 10 days of discovery. Ex. C at CF000115.

83.   The Complaint alleges that the contamination of dust on the Premises by heavy metals was not present when ATR took possession of the Building in September 2016.  Ex. B at ¶ 25.

84.   The Complaint alleges that OSHA testing performed on February 17, 2019 confirmed the presence of dust contaminated by heavy metals. Ex. B at ¶ 23.

85.   In an August 29, 2019 letter to ATR, SACP demanded that ATR pay SACP damages allegedly resulting from environmental cleanup and facilities repairs at the Premises. Ex. A.

86.   C&F was first advised of the alleged contamination of the Premises in a January 14, 2020 email from Commercial Insurance Associates, LLC.  A true and accurate copy of the January 14, 2020 email from Commercial Insurance Associates, LLC's is attached hereto as Ex. D.

87.   The alleged "pollution condition" at the Premises was not discovered by ATR within 72 hours of its discovery through the OSHA testing performed on  February 17, 2019.

88.     ATR failed to report the alleged "pollution condition" within 10 days of being advised by SACP in an August 29, 2019 letter that it was demanding that ATR pay SACP damages allegedly resulting from environmental cleanup and facilities repairs at the Premises.

89.     Accordingly, ATR failed to satisfy all of the required conditions of the Insuring Agreement of the Onsite Cleanup Coverage Part of the Policy with respect to the alleged contamination of the Premises and, therefore, no coverage is provided under the Onsite Cleanup Coverage Part of the Policy in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

WHEREFORE, C&F seeks a judgment that it owes no duty under the Onsite Cleanup Part of the Policy to defend or indemnify ATR in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

**COUNT VI**
**(No Coverage Under Policy's Onsite Cleanup**
**Coverage Part - Lead Contamination Exclusion)**

90.     C&F incorporates by reference herein paragraphs 1 through 89, as if the same were fully set forth at length.

91.     The Complaint alleges that, on February 27, 2019, inspectors from OSHA tested the dust at the Premises and detected the presence of 'heavy metals such as lead, cadmium,' and 'arsenic'" throughout the Building Ex. A at ¶ 23.

92.     Exclusion 6. Lead Contamination of Section II – Additional Exclusions of the Onsite Cleanup Coverage Part of the Policy provides that the Policy does not apply to "cleanup costs" which are "[f]or any loss, cost or expense arising out of any request, demand or order that any insured or any person test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead" or "[f]or any loss, cost or

expense arising out of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead." Ex. B at p. CF000069.

93.    Accordingly, there is no coverage afforded under the Onsite Cleanup Coverage Part of the Policy for claims asserted against ATR in the Underlying Action seeking to impose liability for "cleanup costs" arising out of "cleaning up, removing . . . , or in any way responding to, or assessing the effects of lead".

WHEREFORE, C&F seeks a judgment that it owes no duty under the Onsite Cleanup Part of the Policy to defend or indemnify ATR in connection with the claims asserted against it in the Complaint filed in the Underlying Action.

## PRAYER FOR RELIEF

Plaintiff Crum & Forster Specialty Insurance Company hereby respectfully requests the entry of an order and judgment in its favor and against Defendants B&K Technology Solutions, Inc. d/b/a Advanced Technology Recycling, declaring as follows:

a.    This court has jurisdiction over the parties and the subject matter of this litigation;

b.    The Policy does not provide coverage to Defendants B&K Technology Solutions, Inc. d/b/a Advanced Technology Recycling, for the claims asserted against it in the Complaint filed in the Underlying Action;

c.    Crum & Forster Specialty Insurance Company does not owe a duty under the Policy to defend Defendants B&K Technology Solutions, Inc. d/b/a Advanced Technology Recycling or reimburse defense costs incurred by Defendants B&K Technology Solutions, Inc. d/b/a Advanced Technology Recycling in connection with the claims asserted against it in the Complaint filed in the Underlying Action;

d.    Crum & Forster Specialty Insurance Company does not owe a duty under the Policy to indemnify Defendants B&K Technology Solutions, Inc. d/b/a

Advanced Technology Recycling in connection with the claims asserted against it in the Complaint filed in the Underlying Action;

e.   Crum & Forster Specialty Insurance Company is entitled to an award of its costs; and

f.   Such other further relief as this Court deems just and appropriate.


Respectfully Submitted,

CRUM & FORSTER SPECIALITY INSURANCE COMPANY

Dated: April 8, 2020

By:     *s/ James J. Hickey*
James J. Hickey
One of the Attorneys for Plaintiff
Crum & Forster Specialty Insurance Company

James J. Hickey (Illinois Bar No. 6198334)
James.Hickey@kennedyslaw.com
KENNEDYS CMK
100 North Riverside Plaza, Suite 2100
Chicago, IL 60606
Phone: (312) 800-5000
Fax: (312) 207-2110